# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JORGE CAIRO MONTERREY,

                 Petitioner,

    vs.

PAMELA BONDI, *et al.*,[1]

                 Respondents.

Case No.: 2:26-cv-00634-GMN-MDC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Jorge Cairo Monterrey's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 8). Federal Respondents Pamela Bondi, Michael Bernacke, Kerri Ann Quihuis, Markwayne Mullin, and Todd Lyons filed a Response, ECF No. 13).[2] Petitioner filed a Reply, (ECF No. 14). For the reasons discussed below, the Court GRANTS the Petition.

## I.    BACKGROUND

Petitioner is a citizen of Cuba. (Am. Pet. 3:2, ECF No. 8). On November 21, 2023, Petitioner applied for admission at the San Ysidro, California port of entry. (I-213 at 2, Ex. A to Fed. Resp., ECF No. 13-1). The same day, Petitioner was paroled into the United States. (Fed. Resp. 2:13–14); (Am. Pet. 3:3–4); (Notice to Appear ("NTA") at 1, Ex. A to Fed. Resp., ECF No. 13-1). In June 2024, Petitioner applied for work authorization, which was approved in July 2024. (I-213 at 3, Ex. A to Fed. Resp). His work authorization was revoked on April 8, 2025, an event for which neither party provides an explanation. (*Id.*).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi.

[2] Respondent John Mattos filed a separate Response, (ECF No. 10), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

According to Petitioner's I-213, he was arrested on October 13, 2025, for a felony offense. (*Id.*).[3]  Three days later, ICE received a Temporary Custody Records from the Clark County Detention Center ("CCDC") regarding Petitioner's arrest, and ICE lodged an Immigration Detainer, Form I-247A, with CCDC. (*Id.* at 2).  The same day, CCDC notified ICE that Petitioner was ready for release pursuant to the immigration detainer. (*Id.*).  Per the I-213, almost two months later in December 2025, ICE transported Petitioner to the Las Vegas ICE office for processing.[4]

Petitioner has been in ICE custody for over five months.  While detained, an Immigration Judge ("IJ") denied Petitioner's asylum claim, as well as his request for a custody redetermination hearing. (IJ Merits Order, Ex. A to Fed. Resp., ECF No. 13-1); (IJ Custody Redetermination Order, Ex. A to Fed. Resp., ECF No. 13-1).  Petitioner appealed the denial of his asylum claim. (IJ Merits Order, Ex. A to Fed Resp.); (Am. Pet. 5:6).  According to the EOIR Automated Case Information available on the date of this Order, Petitioner's appeal remains pending before the Board of Immigration Appeals ("BIA").[5]

With this Petition, Petitioner seeks release on his previous conditions of supervision. (*Id.* 5:11).

---

[3] Federal Respondents attach no evidence of this arrest or charge, other than the I-213 which does not itself constitute a record of the arrest or charge.  Nevertheless, because Petitioner does not contest the allegations of this arrest, the Court accepts Federal Respondents' allegations regarding Petitioner's criminal arrests and conviction as true.

[4] Federal Respondents attach an exhibit titled "Notice of Initial Custody Determination." (Notice Initial Custody Determination, Ex. A. to Fed. Resp., ECF No. 13-1).  It states that an initial custody determination occurred on December 11, 2025, at 2:51 p.m. (*Id.*).  The Notice has a place for a noncitizen to acknowledge receipt of the notification and indicate whether they request an IJ to review the custody determination.  This section also includes a line for a noncitizen to sign.  On the Notice proved by the Federal Respondents, this section is blank and is unsigned by Petitioner.  Thus, the Court cannot find that Plaintiff received this document nor had an opportunity to request review by an IJ.

[5] The Court takes judicial notice of the information on Petitioner's EOIR Automated Case Information page because it may take judicial notice of information posted on official government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010); Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

## II.   LEGAL STANDARD

### A.  Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B.  Statutory Detention Scheme

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, two statutory provisions generally govern the government's authority to detain noncitizens during the pendency of removal proceedings: 8 U.S.C. §§ 1225(b) and 1226.  In *Jennings v. Rodriguez*, 538 U.S. 281 (2018), the Supreme Court explained these statutory provisions.  The Court explained that § 1225 generally governs "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." *Id.* at 287.  In contrast, § 1226 "generally governs the process of arresting and detaining" noncitizens already "inside the United States." *Id.* at 288.

8 U.S.C. § 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *Id.* at 289.  Section 1225(b) applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1).  "[A]pplicants

for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Id.* at 288 (citing § 1182(d)(5)(A)).

Noncitizens subject to detention under either sub-section of § 1225(b) may be temporarily released on humanitarian parole. *See Jennings*, 583 U.S. at 288. Humanitarian parole is authorized under 8 U.S.C. § 1182(d)(5)(A). Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Once humanitarian parole under § 1182(d)(5) is terminated, the noncitizen is "returned to the custody from which he was paroled." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

## III.    DISCUSSION

Petitioner seeks immediate release because his prolonged detention without an adequate bond hearing violates both the INA and the Due Process Clause. (*See generally* Am. Pet). Federal Respondents argue this Court should deny this Petition because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and his temporary detention does not

offend due process. (*See generally* Fed. Resp.).  Though the parties disagree as to which section of the INA governs Petitioner's detention, the Court need not reach that question because it finds that Petitioner's detention is unlawful regardless of the governing statute because his detention violates the Due Process Clause of the Fifth Amendment.[6]

### A.  Humanitarian Parole

As explained above, applicants for admission face mandatory detention under § 1225 but may be released on parole "for urgent humanitarian reasons or significant public benefit," under 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 287.  This exception to mandatory detention, often referred to as humanitarian parole, may be granted "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A).  Further, the implementing regulations require that a noncitizen "present neither a security risk nor a risk of absconding." 8 C.F.R. 212.5(b).  Thus, if a noncitizen has been granted humanitarian parole, it means that a DHS official decided that the individual did not pose a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

Here, the Court finds that Petitioner was granted humanitarian parole under § 1182(d) when he was released into the country in 2023.  Although the parties do not explicitly state that Petitioner was granted humanitarian parole, nor do the provided exhibits supply the legal basis for his release, the Court concludes that he was granted humanitarian parole because it is the

---

[6] In his Reply, Petitioner contends that he is subject to relief under *Jacobo Ramirez v. Mullin, et al.*, No. 25-cv-02136-RFB-MDC (D. Nev.). (Reply 3:15–16, ECF No. 14).  The *Jacobo Ramirez* certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

*Jacobo Ramirez*, 2026 WL 879799, at *4.

Upon review of the record, however, the Court finds that Petitioner here is not a member of the *Jacobo Ramirez* class because he presented at the border and was paroled into the United States.

only exception to § 1225's mandatory detention. *See Martinez v. Immigr. & Customs Enf't Field Off. Dir.*, No. C26-0748JLR, 2026 WL 925625, at *2 (W.D. Wash. Apr. 6, 2026) ("When a petitioner is detained pursuant to § 1225, the only statutory exception to such detention is parole under 8 U.S.C. § 1182(d)(5)(A).").  In other words, Petitioner would not have been released into the country in 2023 if not for a grant of humanitarian parole.

The agency can terminate humanitarian parole in two ways.  First, it terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1).  Second, if parole is not terminated automatically, either "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled."). In such instances, the noncitizens must be provided with written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i).

Regardless of the type of termination, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered *shall be executed*." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see also* 8 C.F.R. § 212.5(e)(2).  "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] *shall again be released* on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody."  8 C.F.R. § 212.5(e)(2)(i) (emphasis added).  Stated differently, unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS

official. *Id.*  Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole. *Id.*

### B.  Due Process

As explained above, Petitioner here was paroled into the country in November 2023 under 8 U.S.C. § 1182(d)(5)(A).  Several courts in the Ninth Circuit have concluded that when a noncitizen is paroled under § 1182, the government cannot summarily revoke that parole without offending due process. *See Velasquez-Chinga v. Noem*, No. 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (collecting cases); *Mendez Oreilly v. Blanche*, No. 2:26-cv-00278-GMN-EJY, 2026 WL 1031192, at *3–5 (D. Nev. Apr. 16, 2026).  Rather, due process for "parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination." *Araujo v. LaRose*, No. 25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (citing *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025) (analyzing factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976))).  While not binding, the Court finds the reasoning in these cases persuasive and adopts it for the reasons discussed below.

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.  Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).  But the "recognized liberty interests of U.S. citizens and [noncitizens] are not coextensive: the Supreme Court has 'firmly and

repeatedly endorsed the proposition that Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 522).

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[7]  Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. *See Mathews*, 424 U.S. at 335.  Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529.  Further, the Supreme Court has recognized that a protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  In *Morrissey v. Brewer*, the Supreme Court explained that when placed on parole, "[t]he parolee has relied on at least an implicit

---

[7] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207.  However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)).  The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004).  Accordingly, the Court will apply the *Mathews* test here.

promise that parole will be revoked only if he fails to live up to the parole conditions." 408 U.S. 471, 482 (1972).  Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Here, after inspection at the San Ysidro port of entry in November 2023, Petitioner was paroled into the United States and was granted work authorization. (I-213 at 3, Ex. 1 to Fed. Resp.).  Even after his work authorization was revoked on April 8, 2025, there is no indication that his parole was terminated. (I-213 at 3, Ex. 1 to Fed. Resp.).  In fact, Petitioner states his parole has not been terminated. (Reply 4:1, ECF No. 14).  Petitioner's parole status created a protectable expectation of Petitioner's continued liberty, and the Court thus finds that the first factor weighs in favor of Petitioner.

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.  The implementing regulations for humanitarian parole require that a noncitizen "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).  Thus, the initial determination that Petitioner should be paroled "reflects a determination by the government that [Petitioner] is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018*)*; *see Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria.").  Civil immigration detention is "nonpunitive in purpose and effect[,]" and is justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690.  Thus, in order to re-detain Petitioner, the government "must be able to present evidence of materially

changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." *Saravia*, 280 F. Supp. 3d at 1176.

The risk of erroneous deprivation of Petitioner's liberty interest is high where the government provides no justification for Petitioner's re-detention, and Petitioner has no opportunity to rebut that justification. *See Luo v. LaRose*, No. 25-cv-3848-LL-VET, 2026 WL 202872, at *3 (S.D. Cal. Jan. 27, 2026) (citing *Pinchi*, 792 F. Supp. 3d at 1035). This is especially true where the government need only show that the "purpose of [Petitioner's] parole has been served" in order to revoke that parole. 8 U.S.C. § 1182(d)(5)(A). The breadth of that standard affords the government substantial discretion to re-detain Petitioner, which compounds the risk of erroneous deprivation. *See Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025) (reasoning in the bond hearing context that "unreviewable" government direction to detain creates a high risk of erroneous deprivation). It follows that the value of additional procedural safeguards, such as notice and an opportunity to be heard, is likewise high.

Here, there is no indication that Petitioner's parole was terminated prior to his re-detention, and if it was terminated, he was not afforded notice nor any means to challenge the revocation of his parole. While Petitioner was arrested for a felony offense prior to being detained by ICE, that does not obviate his due process rights. Even if it is likely that arrest may provide the government with a justification to revoke Petitioner's parole, the government must still inform Petitioner of that justification and provide Petitioner an opportunity to rebut it. Because the government did not do so here, the Court finds that the second *Mathews* factor weighs in favor of Petitioner.

The third and final *Mathews* factor considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the

government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, the government's interest in detaining Petitioner without a hearing is low. *See Morrissey*, 408 U.S. at 483 (explaining that "the State has no interest in revoking parole without some informal procedural guarantees"). Further, in "immigration court, custody hearings are routine and impose a 'minimal' cost." *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025) (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)). Indeed, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Accordingly, the Court concludes that the third *Mathews* factor also weighs in favor of Petitioner.

The Court thus finds that all three of the *Mathews* factors weigh heavily in favor of Petitioner, and therefore Petitioner was entitled to both notice and an opportunity to be heard before his humanitarian parole under § 1182(d)(5)(A) could be revoked. Because Petitioner received neither here, the Court finds that the revocation of his parole violates his rights under the Due Process Clause of the Fifth Amendment.[8]

**C. Relief**

Petitioner asks this Court to order his release. The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). "Its mandate is broad with respect to the relief that may be granted." *Id.* "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

---

[8] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether Petitioner's detention violates the INA.

Here, the specific harm suffered by Petitioner was the revocation of his parole without notice and an opportunity to be heard in violation of the Due Process Clause of the Fifth Amendment.  Petitioner has been detained since December 11, 2025, despite receiving no process prior to his re-detention. (I-213 at 3, Ex. A to Fed. Resp.).  The Supreme Court has consistently held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  While a post-deprivation hearing may be appropriate in situations that urgently require arrest, absent evidence of such urgent concerns, a pre-deprivation hearing is required to satisfy due process. *Id.* at 128; *Ortega*, 415 F. Supp. 3d at 970.  Respondents here make no argument that Petitioner's arrest was urgently required.  In fact, ICE records demonstrate that immigration officers had knowledge of Petitioner's arrest and release the day they occurred, but ICE waited nearly two months before detaining him.  Thus, "because the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original).  Further, a bond hearing would not adequately vindicate Petitioner's rights.  Indeed, ordering a hearing while Petitioner remains detained would reward the government for failing to provide Petitioner any process before detaining him. *See id.*  Moreover, Petitioner has been detained in violation of his constitutional rights for nearly six months.  The Court therefore finds that the appropriate remedy here is immediate release subject to the conditions of Petitioner's prior parole.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 8), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention by **May 14, 2026, at 4 p.m.**, subject to his prior conditions of parole.  Respondents cannot impose additional restrictions on Petitioner, unless those conditions are determined to be necessary at a future pre-deprivation hearing.

**IT IS FURTHER ORDERED** that, prior to any re-detention of Petitioner, the government must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation hearing before a neutral arbiter at which the government bears the burden of providing flight risk or danger by clear and convincing evidence.[9]  This order does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report by **May 15, 2026**, to certify compliance with the Court's order.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi.  The Clerk of Court is kindly directed to update the docket as well as the case caption to reflect this substitution.

The Clerk of Court is also kindly directed to **SEAL** ECF No. 1 and its exhibits, ECF No. 4, and ECF No. 15 due to the sensitive information contained therein. *See* LR IC 6-1; Fed. R. Civ. P. 5.2(a).

///

///

///

---

[9] Given Petitioner's prolonged detention in violation of his constitutional rights, and "[b]ecause it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'— deprivation of liberty—is so significant," the Court finds it constitutionally necessary to impose this equitable remedy in order to minimize the risk of additional error. *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011).

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.  The Clerk of Court is kindly directed to send a copy of this Order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

**DATED** this \_\_\_13\_\_ day of May, 2026.

_____

Gloria M. Navarro, District Judge
United States District Court